## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEVIN VASHAUN MCKINLEY,** | : | |
| **Plaintiff** | : | **CIVIL ACTION** |
| **v.** | : | **No. 17-cv-1573** |
| | : | |
| **MEIER et al.,** | : | |
| **Defendants.** | : | |

**MCHUGH, J.**                                                                 **April 17, 2019**

### MEMORANDUM

This is an unusual civil rights case in which Plaintiff Kevin McKinley, advancing a state-created danger theory, alleges that he was placed in jeopardy when a correctional officer at Chester County Prison publicly revealed his service as a police informant. Defendants move to dismiss, arguing that Plaintiff's role as an informant was already widely known and that any additional disclosure created no new risk. Defendants further argue that Plaintiff fails to state a claim because, fortunately, he suffered no physical injury as a result of the officer's disclosure and cannot proceed solely on the basis of emotional distress as a matter of law. I am persuaded that the defense interprets the doctrine of state-created danger too narrowly and further persuaded that, within the Third Circuit, both nominal and punitive damages are recoverable for a violation of a prisoner's civil rights even when compensatory damages for emotional distress are not. I therefore deny the motion to dismiss. [1]

---

[1] The court is grateful for the *pro bono* service of J. Colin Knisely, Esquire, & Leah Mintz, Esquire, of Duane Morris, and commends Ms. Mintz for her oral argument in response to defense counsel's well-crafted motion.

## I. Factual and Procedural Background

Plaintiff Kevin Vashaun McKinley was held in detention at Chester County Prison before transfer to the State Correctional Institution at Frackville. Am. Compl. ¶ 6, ECF No. 21; Notices of Change of Address, ECF Nos. 15, 18. He has sued Chester County as the entity responsible for the policies, practices, implementation, training, supervision, and conduct of all matters at Chester County Prison. Am. Compl. ¶ 8. Plaintiff has named as Defendant Mr. Meier, a correctional officer at Chester County Prison, whom he contends deliberately exposed him to retaliation as a police informant. *Id.* ¶ 10. Warden D. Edward McFadden is also a Defendant, as the individual who establishes and enforces the rules of the prison as well as the policies of Chester County regarding the detention and safety of inmates. *Id.* ¶ 9.

According to the Complaint, Mr. McKinley, at great risk to himself, worked as a confidential informant for law enforcement officials and testified at trial against criminal defendants, including drug dealers. Am. Compl. ¶ 14-15. Mr. McKinley provided this service to law enforcement despite his fear that drug dealers in his neighborhood would retaliate against him for the work he did for law enforcement. *Id.* ¶ 16. Mr. McKinley's fears were confirmed when he was shot in the knee and ankle while walking on the street because of his cooperation with law enforcement. *Id.* ¶ 17. Mr. McKinley's vulnerability to retaliation meant that he was placed in protective custody when he was incarcerated at Chester County Prison. *Id.* ¶ 18. This protective measure proved to be inadequate, though, because Mr. McKinley was attacked by other inmates at Chester County Prison, and prison officials were forced to transfer him to another cell block for his safety. *Id.* ¶ 19. And when he could not be placed in any prison block because inmates in each block had threatened him, prison officials placed Mr. McKinley in a holding cell in the prison's I.D. department. *Id.* ¶ 20.

The Complaint further avers that threats and harassment by other inmates against Mr. McKinley intensified after he testified while incarcerated. *Id.* ¶¶ 21-22. Other inmates ostensibly placed contraband within Mr. McKinley's cell and then alerted correctional officers to its presence; shouted at officers to get "that rat" out; said that all "rats" should die; and attacked Mr. McKinley on multiple occasions, punching him in the face and knocking him to the ground and dragging him to his cell. *Id.* ¶¶ 22, 24.

Mr. McKinley alleges that his vulnerability to retaliation from other inmates should have been clear to Correctional Officer Meier who supervised the prison dayroom where inmates congregated. *Id.* ¶ 26-27. Nevertheless, Officer Meier announced to inmate Hector Tirado and *over the dayroom intercom* when at least one other inmate could overhear that Mr. McKinley had cooperated with law enforcement officials. *Id.* ¶¶ 27-36, Ex. A. When Mr. McKinley learned of Officer Meier's announcement over the dayroom intercom, he requested a transfer to a safe space within Chester County Prison. *Id.* ¶ 37. But Mr. McKinley's request was put on hold because many of the other blocks in the prison housed inmates who also posed a threat to Mr. McKinley's safety. *Id.* Mr. McKinley then submitted a formal grievance to Chester County Prison Administrative Director Healy, but, instead of addressing it, Director Healy, after some delay, forwarded it to Captain Sergi. *Id.* ¶¶ 38-40. Captain Sergi determined both that the complaint grievance was not subject to the inmate grievance procedure and that it was not credible. *Id.* ¶ 41, Ex. C. Nonetheless, Captain Sergi instructed Chester County Prison staff that they were prohibited from discussing legal information regarding inmates' cases. *Id.* ¶ 41, Ex. C. Plaintiff's grievance ultimately reached Warden McFadden, *Id.* ¶ 42, who purportedly failed to take any corrective action. *Id.*

Plaintiff pleads that rumors about Mr. McKinley's cooperation with law enforcement began to spread thereafter, and, as other inmates learned of Mr. McKinley's cooperation with law enforcement, they began singing taunting songs around him.  *Id.* ¶¶ 43-44.  At least one other correctional officer allegedly made a comment to Mr. McKinley about his status as a law enforcement informant.  *Id.* ¶¶ 41, 45.  "These new comments went unrebuked by prison supervisors."  Pl.'s Resp. Defs.' Mot. Dismiss 3.  According to Mr. McKinley, these events caused him mental and emotional distress, including some physical manifestations of that distress, specifically tightness in the chest and muscle pain.  Am. Compl.  ¶ 46.

On these facts, Mr. McKinley asserts a Fourteenth Amendment substantive due process claim under a state-created danger theory against Officer Meier and a *Monell* claim against Warden McFadden and Chester County, *Id.*, suing the individual defendants in both their official and personal capacities.  Mr. McKinley seeks compensation and punitive damages.  *Id.* ¶ 62.

As to Defendant Meier, Mr. McKinley asserts that:

- Officer Meier was aware that Mr. McKinley had served as a confidential informant and had been previously attacked because of his cooperation with law enforcement.

- Despite this awareness, Officer Meier, who was responsible for protecting the safety of inmates, announced over a dayroom intercom in earshot of two inmates that Mr. McKinley had cooperated with law enforcement.

- Officer Meier's announcement caused Mr. McKinley to experience heightened anxiety, fear, tightness in his chest, muscle pain, and an inability to sleep.

*Id.* ¶¶ 48-57.

As to the County and Warden, Mr. McKinley asserts that:

- They have adopted customs, policies, and practices which knowingly increase the risk of danger to the inmates at Chester County Prison.

- They failed to adequately train, monitor, and supervise correctional officers regarding the proper procedures for dealing with inmates who have cooperated with law enforcement officials or served as confidential informants.

- Chester County failed to take measures to stop or limit the customs, policies, and practices that caused harm to Mr. McKinley and failed to adequately train, monitor, and supervise correctional officers at Chester County Prison, including Officer Meier, in those policies.

*Id.* ¶¶ 58-62.

## II.     Standard of Review

Defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss is governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

## III.     Discussion

"[T]he state-created danger theory is a viable mechanism for establishing a constitutional claim under 42 U.S.C. § 1983." *Kneipp v. Tedder*, 95 F.3d 1199, 1211 (3d Cir. 1996). To establish a § 1983 claim under the state-created danger theory, a plaintiff must prove that:

(1) the harm ultimately caused was foreseeable and fairly direct;

(2) a state actor acted with a degree of culpability that shocks the conscience;

(3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class

of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger had the state not acted at all.

*Bright v. Westmoreland Cty.*, 443 F.3d 276, 281 (3d Cir. 2006) (internal citations and quotation marks omitted).

Defendants raise three arguments in support of their Fed. R. Civ. P. 12(b)(6) motion:  (a) Officer Meier did not create any new danger to Mr. McKinley; (b) the absence of physical harm precludes relief; and (c) Mr. McKinley cannot prove that Chester County had in place a policy, practice or custom that caused the deprivation of a constitutional right.

A. *Mr. McKinley Has Alleged Sufficient Facts to State a Plausible Claim that Defendant Meier Rendered Him More Vulnerable to Danger than if He Had Not Acted at All*

Defendants hinge their argument on the fourth *Bright* factor, asserting that Mr. McKinley cannot sustain his § 1983 state-created danger claim because Correctional Officer Meier did not use his authority to *create* an opportunity for harm to Mr. McKinley that would not have otherwise existed. Mot. Dismiss 7, ECF No. 23.  Defendants point out that, by Mr. McKinley's own admission, his status as a confidential informant and law enforcement cooperator was long-standing and already well known throughout the Prison population before Officer Meier made the announcement.  In fact, Mr. McKinley pleads prior physical attacks against him.  Am. Compl. 5.

Defendants' premise is that a claim for state-created danger under *Bright* exists only when a state actor used his authority to *create* an opportunity for harm that would not have otherwise existed.  Such a reading of *Bright* is too narrow.

The Third Circuit expressly stated that a state-created danger claim can succeed where "a state actor affirmatively used his or her authority in a way that created a danger to the citizen *or that rendered the citizen more vulnerable to danger* than had the state not acted at all." *Bright*, 443 F.3d at 281 (emphasis added); *see also Kneipp*, 95 F.3d at 1201 (3d Cir. 1996) ("adopt[ing] the 'state-created danger' theory as a viable mechanism for establishing a constitutional violation under 42 U.S.C. § 1983" where "police officers increased the risk of harm" to the plaintiff or "made [plaintiff] more vulnerable to harm").

Although Mr. McKinley was already exposed to danger due to knowledge among some portion of the prison population that he had cooperated with law enforcement, Officer Meier made him "*more vulnerable*" to danger by broadcasting this information over the dayroom intercom. Of critical importance, at oral argument, counsel for Plaintiff represented that the block on which Mr. McKinley was housed had been identified as the safest for him because his history of cooperation was either unknown or less known than elsewhere in the prison. At least two inmates heard this information at the time Officer Meier made the announcement, and the subsequent spread of rumors of Mr. McKinley's cooperation with law enforcement rendered this block unsafe as well. There were "no other places that Mr. McKinley could go." Pl.'s Resp. Defs.' Mot. Dismiss 10. In support of this assertion, Mr. McKinley pleads that episodes of harassment increased *after* Officer Meier's announcement. Am. Compl. ¶¶ 43-44.

Defendants argue that any danger was created by McKinley's "own actions inside and outside of the Prison" and that he "put himself in harm's way by getting arrested and sent to prison." Defs.' Reply 3, ECF No. 25. But the risk Plaintiff asserts does not stem from his past commission of crimes, his incarceration, or even his agreement to cooperate, but the added risk stemming from disclosure of that cooperation to others who did not previously know.

Confidential informants are certainly a "discrete class of persons" as "opposed to a member of the public in general," *Bright*, 443 F.3d at 281, and I am hard pressed to accept the proposition that broadcasting their status as informants in a prison setting comes at no risk. It also bears emphasis that, given the importance of cooperators in the detection and successful prosecution of crime, excluding confidential informants from the protection of the state-created danger doctrine would not serve the public interest.

Mr. McKinley has pled sufficient facts tending to show that Officer Meier's broadcasting information about his law enforcement cooperation rendered him *more vulnerable* to danger. Mr. McKinley was undoubtedly in a worse position after Officer Meier made the announcement than he would have been had the officer not done so. The announcement seemed to invite retaliation and decreased the possibility of housing Mr. McKinley safely. The actual effect of the officer's conduct, if any, is something that requires discovery.

B. *Mr. McKinley Has Pled Sufficient Facts to Suggest that He May Be Entitled to Nominal and Punitive Damages*

Defendants argue that Mr. McKinley fails to state a claim because he did not suffer any physical harm and courts have declined to recognize state-created danger claims for emotional distress. Defs.' Mot. Dismiss 7, ECF No. 23-2. They rely on a comprehensive review of decisions that have permitted state-created danger claims to proceed and correctly observe that all of them have involved physical injury. The defense describes the facts of those cases accurately, but I do not read any of them as having specifically considered or held that physical injury is a required element of the claim. The fact that they involve claims of physical injury is simply coincidental.

As to Section 1983 generally, the Supreme Court has held that compensatory damages may be awarded for mental and emotional injury. *Memphis Cmty. Sch. Dist. v. Stachura*, 477

U.S. 299, 307 (1986); *Carey v. Piphus*, 435 U.S. 247, 264-67 (1978) (but granting only nominal

damages without proof of emotional injury).  Accordingly, I reject Defendants' argument as

formulated.  But that does not end the inquiry, because I believe the Third Circuit would expect

me to consider the issue under the Prison Litigation Reform Act, 42 U.S.C. § 1997e (2013).

The PLRA reads in relevant part:

No Federal civil action may be brought by a prisoner confined in a jail, prison, or
other correctional facility, for mental or emotional injury suffered while in custody
without a prior showing of physical injury or the commission of a sexual act (as
defined in section 2246 of Title 18).

42 U.S.C. § 1997e(e) (2013).

Here, Mr. McKinley pleads muscle pain and tightness of the chest, but does so as

"physical symptoms" of his emotional distress, not as physical injuries giving rise to emotional

distress.  The PLRA bars such claims.  But that still does not end the inquiry because, within the

Third Circuit, nominal and punitive damages are recoverable in the absence of compensatory

damages.  The Court of Appeals has recognized that the vindication of constitutional rights is

important in its own right, with the result that such claims can stand on their own merits and are

therefore not barred by the PLRA.  In *Allah v. Al-Hafeez*, 226 F.3d 247, 252 (3d Cir. 2000), the

Court  held that "[n]either claims seeking nominal damages to vindicate constitutional rights nor

claims seeking punitive damages to deter or punish egregious violations of constitutional rights

are claims 'for mental or emotional injury.'"

Mr. McKinley's amended complaint states that the actions of Officer Meier were "so

malicious, intentional, and/or reckless and further display such reckless or deliberate indifference

to Mr. McKinley's constitutional rights that punitive damages are warranted."  Am. Compl. ¶ 57.

And to the extent Mr. McKinley is seeking to vindicate his "constitutional right or to punish for

violation of that right," nominal damages are also available, even in the absence of a specific

demand. *Allah*, 226 F.3d at 251, 252 ("[I]t is not necessary to allege nominal damages.") (quoting *Basista v. Weir*, 340 F.2d 74, 87 (3d Cir. 1965)). In summary, Mr. McKinley's right to claim damages, though limited, survives.

### C. Mr. McKinley Has Alleged Sufficient Facts to State Plausible Monell Claims

Defendants argue that Mr. McKinley's *Monell* claims against Warden McFadden and Chester County cannot be sustained because he cannot prove that Chester County had in place a policy, practice, or custom that caused the deprivation of a constitutional right. I cannot reach that conclusion at this stage in the case.

"[F]ailure to train may amount to deliberate indifference where the need for more or different training is so obvious, and inadequacy very likely to result in violation of constitutional rights," where, for example, "harm occurred on numerous previous occasions and officials failed to respond appropriately, or where risk of harm is great and obvious." *Carter*, 181 F.3d at 357 (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989), and *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)); *see also Thomas v. Cumberland Cty.*, 749 F.3d 217, 223 (3d Cir. 2014) ("[I]n certain situations, the need for training can be said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights even without a pattern of constitutional violations.") (internal citation and quotation marks omitted).

Mr. McKinley has alleged that Chester County and Warden McFadden failed to "train, monitor, and supervise correctional officers regarding proper procedures for dealing with inmates who have cooperated with law enforcement officials or served as confidential informants and appropriate conversations with inmates regarding the conduct of other inmates, particularly with regard to other inmates' interactions with law enforcement." Am. Compl. ¶ 59. He has further alleged that this lack of training, monitoring, and supervision caused the violation of his

constitutional rights.  *Id.* ¶¶ 59, 62.  And he has alleged that "the harm that can come from announcing that an inmate is a confidential informant is the type of harm that is so apparent from correctional officers' daily interactions with inmates, many of whom may have cooperated with law enforcement officials against other inmates, that the need for additional or more training is obvious."  Pl.'s Resp. Defs.' Mot. Dismiss 11.

Given the importance of cooperators, and the number of cooperators in custody, there is an inherent appeal to Plaintiff's contention that prison officials should to be trained to refrain from discussing inmates' legal cases in a way that would place them at risk of physical harm. The Complaint also suggests a pattern of such violations, as it was not just Officer Meier who made public mention of McKinley's prior history as an informant; at least one other correctional officer made a comment to Mr. McKinley about this history.  *Id.* ¶ 45.  And Plaintiff further pleads that "[t]hese new comments went unrebuked by prison supervisors."  Pl.'s Resp. Defs.' Mot. Dismiss 3; Am. Compl. ¶ 45.  Finally, McKinley pleads that prison officials failed to take any corrective action in response to his grievance—including at the level of policymaker Warden McFadden.  Am. Compl. ¶¶ 38-42.  I therefore find that Mr. McKinley has adequately pled his *Monell* claims against Warden McFadden and Chester County.

The record reflects that prison personnel were cautioned not to reveal the status of inmates as confidential sources after this incident.  Whether represented enforcement of an existing policy or training regimen or a recognition that such admonitions should have been given earlier is not something that can be determined at the pleading stage.

**IV.** **Conclusion**

For the foregoing reasons, I deny Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. An appropriate Order follows.

_____/s/ Gerald Austin McHugh_
United States District Judge