# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEVIN VASHAUN MCKINLEY, : | |
| : | |
| Plaintiff, : | |
| : | CIVIL ACTION |
| v. : | No. 17-1573 |
| : | |
| CORRECTIONAL OFFICER MEIER, et al., : | |
| : | |
| Defendants. : | |

**McHUGH, J.**  **APRIL 24, 2020**

## MEMORANDUM

This is a prisoner civil rights case brought under a state-created danger theory based on allegations that Plaintiff Kevin McKinley's status as a confidential informant was inappropriately revealed by a correctional officer, placing him at risk of retaliation.[1] Defendants now move for summary judgment, contending that no admissible evidence supports Plaintiff's version of the facts, and further contending that any wrongful conduct Plaintiff could prove would not rise to the level of "conscience shocking" behavior sufficient to establish a substantive due process claim. *Bright v. Westmoreland Cty.*, 443 F.3d 276, 281 (3d Cir. 2006). At a minimum, Plaintiff faces daunting evidentiary challenges. But even if he could present admissible evidence in support of his claim, Defendants are correct that the correctional officer's conduct cannot be deemed to rise above the level of negligence, which is insufficient to establish a Fourteenth Amendment violation. I am therefore compelled to grant Defendants' Motion for Summary Judgment.

---

[1] This Court again recognizes the pro bono service of J. Colin Knisely, Esquire, & Leah Mintz, Esquire, of Duane Morris, and commends their zealous and creative advocacy.

I.      **Relevant Factual Background**

At the time of the incident in question, Plaintiff was incarcerated on Q-Block of Chester County Prison.[2]  Am. Compl. ¶¶ 26-27, ECF 21.  During the afternoon of January 13, 2017, Plaintiff was at religious services while fellow inmate Hector Tirado was allegedly in the dayroom, which was being supervised by Correctional Officer Justin Meier.  Am. Compl. ¶¶ 27-30.  Defendant Meier purportedly entered into a conversation about life in the prison over the dayroom intercom with Tirado, during which he mentioned through the intercom that both Plaintiff and Mr. Tirado were confidential informants.[3]  *Id*. ¶¶ 30-33.  Plaintiff further alleges that other inmates who were present in the room would have been able to overhear the conversation, including one Clyde Miller.  *Id*. ¶¶ 35-36.  The incident was investigated by prison officials pursuant to Plaintiff's grievance:  Defendant Meier denied having identified anyone as an informant, and Defendant Meier was not sanctioned at the conclusion of the investigation.  Meier. Dep. 83:10-85:6.[4]

Because Plaintiff was not present at the time, his case depends upon others who were there.  For proof, Plaintiff points to Mr. Tirado and Mr. Miller.  Plaintiff avers that Mr. Tirado approached him over dinner "in an agitated, anxious, and excited manner" to relay the conversation he had with Defendant Meier earlier in the afternoon.  Pl.'s Interrog. Resp. ¶ 7, ECF 38-2.  Clyde Miller was not present when Mr. Tirado purportedly shared this information

---

[2] Plaintiff is currently at the State Correctional Institution at Frackville.

[3] Neither party has described the layout of the dayroom with specificity, but given Plaintiff's characterization of Mr. Tirado and Defendant Meier's conversation taking place over the intercom, I infer that officers supervising the dayroom work from a station enclosed with safety glass and communicate with inmates on the other side of the barrier through such intercom.

[4] While only excerpts of Defendant Meier's deposition transcript are in the record, ECF 38-4, counsel has produced the entire deposition for the Court's review upon its request, and the Court is citing to the transcript outside of the included excerpts.

with Plaintiff, but later allegedly corroborated Mr. Tirado's account in a written statement provided to Plaintiff.  *Id.*; Ex. A to Pl.'s Interrog. Resp., ECF 38-2.  Plaintiff and Defendants have attempted to locate Clyde Miller for the purposes of discovery without success.  Def. MSJ at 10, ECF 37; Pl. Br. at 3, ECF 42.  As to Mr. Tirado, however, the defense has secured a sworn affidavit in which he denies that the alleged conversation between him and Defendant Meier ever occurred.  Tirado Aff. ¶ 6, ECF 37-2.  The affidavit further states that he never informed Plaintiff about having such a conversation with Defendant Meier, nor did he ever tell Plaintiff that Clyde Miller had overheard such a conversation.  *Id.* ¶¶ 10-11.  Defendants rely upon Mr. Tirado's affidavit to deny Plaintiff's allegations in their Answer.  Answer ¶¶ 29-35, ECF 30.  Plaintiff's counsel elected not to depose Mr. Tirado.

As to Mr. Miller, Plaintiff has produced what purports to be a written statement, hand printed on lined paper similar to a standard "legal pad," describing a conversation between Defendant Meier and Mr. Tirado, in which his cooperation with law enforcement and that of Plaintiff's was mentioned.  It is signed "Clyde Miller," and there is an inmate number beneath the signature.  Ex. A, ECF 38-2.

Plaintiff claims he subsequently sought transfer to another block, which could not be arranged.  Am. Compl. ¶ 37.  Plaintiff, who had been attacked and harassed in the past for his cooperation with law enforcement, *id.* ¶¶ 14-24, further alleges that he was then taunted and harassed by other inmates and correctional officers about his status as an informant, causing emotional distress, *id.* ¶¶ 4, 43-47.[5]

---

[5] Plaintiff further complains about a grievance being ignored.  Am. Compl. ¶¶ 39-42.  Defendants dispute this and contend that Plaintiff voluntarily withdrew the grievance after it was denied at the first stage in the process.  Def. MSJ at 14.  I do not view this as pertinent to the issues before me.

These allegations form the basis for the two counts in the Amended Complaint. Count I is against Defendant Meier pursuant to a state created danger theory, based on Defendant Meier's purported public statements to Mr. Tirado in the dayroom. Count II is against Chester County and Warden McFadden for municipal liability under a failure to train theory, specifically Defendants' inadequate supervision regarding procedures for inmates who have served as confidential informants and officers' conversations with said inmates.[6]

## II.     Standard of Review

This Motion is governed by the well-established standard for summary judgment set forth in Fed. R. Civ. P. 56(a), as amplified by *Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986).

## III.    Discussion

### A. One of the two witnesses identified by Plaintiff could suffice to establish a factual predicate for his claim

The threshold question is whether the statements purportedly made by Mr. Tirado and Mr. Miller establish a factual basis for Plaintiff's claim.

I will begin with Mr. Tirado's alleged statement to Plaintiff on the day the event is alleged to have occurred, January 13, 2017. The Third Circuit has squarely held that "[h]earsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment." *Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009). Neither party disputes that Mr. Tirado's alleged statement to Plaintiff would constitute hearsay; therefore, to be

---

[6] Defendants previously moved to dismiss the Amended Complaint. After hearing oral argument, I denied the motion, concluding that discovery was warranted, in part because of the important role played by cooperating witnesses, and the corresponding need to protect them. ECF 28.

properly considered by the Court, the statement would need to fall into one of the hearsay exceptions provided in Federal Rule of Evidence 803.

Plaintiff attempts to rely upon the "excited utterance" exception, defined by the Federal Rules of Evidence as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Fed. R. Evid. 803(2). The Third Circuit has articulated four requirements for admitting a hearsay statement under the excited utterance exception: "(i) a startling occasion; (ii) a statement relating to the circumstances of the startling occasion; (iii) a declarant who appears to have had opportunity to observe personally the events; and (iv) a statement made before there has been time to reflect and fabricate." *United States v. Brown*, 254 F.3d 454, 458 (3d Cir. 2001). Plaintiff can make a reasonably strong argument for satisfying the first three requirements: (i) being publicly identified by a correctional officer as an informant could undoubtedly be startling to an individual; (ii) Mr. Tirado's purported statement to Plaintiff directly addresses the startling occasion in question; and (iii) Mr. Tirado directly participated in it.

But Plaintiff cannot satisfy the fourth requirement, as multiple hours passed between the alleged dayroom incident and the conversation at dinner. Admittedly, the rule does not mandate that the statement be "contemporaneous with the startling event," but rather only that it be contemporaneous with "the excitement caused by the event." *Id*. at 460. Here, too much time passed for one to be confident in presuming that any contemporaneous emotional reaction overwhelmed Mr. Tirado's capacity to reflect upon what he had heard. It was also enough time within which he could choose in a deliberate way what to recount to Plaintiff.

In holding that an excited utterance need not be contemporaneous, one of the cases cited by the Third Circuit in *Brown* was *United States v. Tocco*, 135 F.3d 116, 127-28 (2d Cir. 1998),

5

where an out-of-court statement was admitted as an excited utterance "even though it was made some *three hours* after the event." I do not take *Brown*'s citation as necessarily adopting *Tocco*, but rather construe it as the Court of Appeals citing one example of an unusually liberal application of the rule. In any event, the emotional forces affecting the conduct of the declarant in *Tocco* were far more profound. There, a criminal defendant had set a store on fire as part of a scheme to collect insurance proceeds. *Tocco*, 135 F.3d at 120. Shortly after setting the fire, the defendant realized that there might be people trapped in the residential apartments above the store, and three hours later told an informant in a "hyped" and "nervous" manner that he had "lit a building." *Id*. at 128. The events in play there, where the declarant realized that his conduct might have resulted in multiple deaths (including, ultimately, the death of one firefighter), would certainly stir strong emotions likely to linger for a sustained period. The conversation described here—even if unusual—cannot be said to give rise to an analogous level of emotion. Consequently, Plaintiff cannot invoke the excited utterance exception to overcome the inadmissibility of Mr. Tirado's statement.

      As to Mr. Miller, up to this point the parties have not located him. Assuming he cannot be found, Plaintiff seeks to admit his written statement under Federal Rule of Evidence 804(b)(3) as a statement against interest. Plaintiff reasons that Miller put himself at risk of retaliation from prison officials by supporting Plaintiff's account of what transpired in the dayroom. Moreover, because the statement was made in connection with a pending judicial proceeding, Plaintiff argues that Mr. Miller would place himself at risk of criminal prosecution under 18 U.S.C. § 1001 if his statement were "materially false, fictitious, or fraudulent." Beyond a hearsay objection, Defendants respond with fundamental challenges to the authenticity of Miller's

statement, pointing out that it is unsworn and lacks any indicia of reliability such as official letterhead.

For present purposes, there is no need to untangle this knot, because the Court of Appeals has made clear that "hearsay statements can be considered on a motion for summary judgment if they are capable of admission at trial." *Shelton v. University of Medicine & Dentistry of New Jersey*, 223 F.3d 220, 223 n.2 (3d Cir. 2000). If Mr. Miller were to be located, he could testify to the contents of the statement at trial. I therefore conclude that his statement creates a genuine issue of material fact with respect to whether the incident in the dayroom occurred.

### B. Plaintiff's claim nonetheless fails because the conduct alleged cannot be said to "shock the conscience" as required for a state-created danger claim

This does not end the inquiry, because it still must be determined whether the incident alleged by Plaintiff is enough to "shock the conscience" under *Bright* and its progeny. In *Bright*, the Third Circuit established four factors a plaintiff must show to succeed with such a claim:

> (1) The harm ultimately caused was foreseeable and fairly direct;
>
> (2) the state actor acted with a degree of culpability that shocks the conscience;
>
> (3) a relationship between the state and the plaintiff existed such that the foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and,
>
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.[7]

---

[7] The third and fourth *Bright* factors are not at issue here. Plaintiff is in state custody and alleges that a correctional officer used his authority to put him at greater risk of harm by exposing his status as a confidential informant. At the motion to dismiss stage, the defense argued that Plaintiff's service to law enforcement was so well known that a conversation acknowledging him as an informant would not have created any additional risk. For present purposes, I continue to assume that there would have been at least incremental added risk.

*Bright*, 443 F.3d at 281. Determining whether conduct shocks the conscience must be done on a case-by-case basis, depending in part on the amount of time the state actor had at his disposal in deciding to act. *Sanford v. Stiles*, 456 F.3d 298, 309 (3d Cir. 2006). To that end, the Third Circuit has identified three tiers of culpability in state-created danger claims:

> In hyperpressurized environments requiring a snap judgment, an official must actually intend to cause harm in order to be liable. In situations in which the state actor is required to act in a matter of hours or minutes, we require that the state actor disregard a great risk of serious harm. And where the actor has time to make an unhurried judgment, a plaintiff need only allege facts supporting an inference that the official acted with a mental state of deliberate indifference.

*Kedra v. Schroeter*, 876 F.3d 424, 437 (3d Cir. 2017) (cleaned up).[8] On the record before me, it is clear the conduct alleged did not take place under emergency circumstances. It is less clear whether the intermediate standard applies. But even under the least demanding standard—deliberate indifference—Plaintiff cannot meet his burden. The Third Circuit test for assessing deliberate indifference is such that "deliberate indifference might exist without actual knowledge of a risk of harm when the risk is so obvious that it should be known," or where the state actor's conduct otherwise entails "conscious disregard of a substantial risk of serious harm." *L.R. v. Sch. Dist. of Philadelphia*, 836 F.3d 235, 246 (3d Cir. 2016) (internal quotation marks omitted). Nonetheless, the Court of Appeals has also emphasized that actions demonstrating mere negligence do not rise to the level of deliberate indifference and are therefore not enough to shock the conscience. *Sanford*, 456 F.3d at 311.

---

[8] This opinion uses (cleaned up) to indicate that extraneous, nonsubstantive information—like brackets, internal quotation marks, alterations, and citations—has been omitted from quotations. *See, e.g.*, *United States v. Steward*, 880 F.3d 983, 986 n.3 (8th Cir. 2018); *United States v. Reyes*, 866 F.3d 316, 321 (5th Cir. 2017).

The conduct alleged here would not rise above the level of negligence. Defendant Meier was purportedly engaged in a conversation with Mr. Tirado over the dayroom intercom, and as the conversation unfolded, Meier made a reference to Tirado's and Plaintiff's confidential informant statuses that others in the dayroom, including Miller, could ostensibly hear. Plaintiff does not allege that Defendant spoke with an intent to reveal his and Tirado's identities or that he meant to address anyone beyond Tirado. There is no suggestion that the information was broadcast over a public address system for the purpose of maliciously targeting Plaintiff or Tirado. And Plaintiff has pled that his status as an informant was already widely known, and his placement in the cellblock where the conversation took place was a function of his status. Am. Compl. ¶¶ 14-24. Though it would undoubtedly be wrong and ill-advised for a correctional officer to make such a statement, the record of this case taken as a whole does not suggest a level of culpability that would "shock the conscience."

The Court of Appeals has declined to find conscience-shocking behavior under far more compelling facts. *See, e.g.*, *Scheiber v. City of Philadelphia*, 320 F.3d 409 (3d Cir. 2003) (police not liable for failure to breach apartment door in response to neighbor's report of screaming inside, where individual was ultimately raped and murdered); *Sanford v. Stiles*, 456 F.3d 298 (3d Cir. 2006) (school counselor not liable for student suicide despite sending him home following screening).

Plaintiff cites *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008), as analogous, but the conduct there was far more egregious. In *Phillips*, colleagues of an aggrieved ex-boyfriend who worked at a county 911 call center allegedly helped provide the ex-boyfriend with information allowing him to track down and murder his ex-girlfriend and two others, despite the county employees' awareness of the assailant's emotional disturbance and specific knowledge

9

they were engaging in unauthorized conduct. *Id.* at 228-29. Such a degree of informed, sustained, and improper collaboration alleged between the call center operators and the aggrieved ex-boyfriend established a level of culpability beyond negligence. Here, Defendant Meier's purported statement to Tirado in a single conversation does not approach the "conscious disregard of a substantial risk of serious harm" displayed by the defendants in *Phillips*.

At this stage, with the record fully developed, I conclude as a matter of law that Defendant Meier's alleged behavior, even if proven, would not rise to the level of culpability necessary to "shock the conscience" as required by *Bright* and other controlling cases.

### C. Count II fails because there is no underlying § 1983 violation

In Count II of the Amended Complaint, Plaintiff also contends that Defendants Warren McFadden and Chester County are liable under § 1983 for failure to train correctional officers regarding proper procedures for interacting with confidential informants and holding conversations about inmates with others. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). But a governmental actor cannot be liable for fostering or failing to prevent a deprivation of rights unless an underlying deprivation occurred. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006) (dismissal of § 1983 claims against Mayor required dismissal of *Monell* claims based upon the same factual allegations of unlawful conduct).

Because I have already held that Plaintiff has failed to state a § 1983 claim for deprivation of his Fourteenth Amendment rights under a state-created danger theory, it follows that his *Monell* claims based upon the same alleged conduct must also be dismissed.

## IV. Conclusion

For the reasons set forth above, Defendants' Motion for Summary Judgment will be **GRANTED**.  An appropriate Order follows.

　/s/ Gerald Austin McHugh　
United States District Judge
